**BARBER RANEN LLP**
DEREK S. SACHS, SB# 253990
E-Mail: Derek.Sachs@barberranen.com
GEORGE J THEOFANIS, SB# 324037
E-Mail: George.Theofanis@barberranen.com
One Embarcadero Center, Suite 2100
San Francisco, CA 94111
Telephone: 916.313.3630

Attorneys for Defendant U.S. Tool Grinding, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

REX ALAN DINESEN, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

U.S. TOOL GRINDING, INC.; and DOES 1 through 20, inclusive,

Defendants.

Case No.

**DEFENDANT U.S. TOOL GRINDING, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER CAFA**

Trial Date: None Set

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendant U.S. Tool Grinding, Inc. ("Defendant") by and through its counsel, hereby removes the above-captioned action from the Superior Court of the State of California, for the County of Los Angeles, to the United States District Court for the Central District of California under 28 U.S.C. §§ 1332, 1441, 1446, and 1453. In support of this Notice of Removal, Defendant states as follows:

/ / /

/ / /

/ / /

**COMPLAINT AND TIMELINESS OF REMOVAL**

1. On February 1, 2023, Plaintiff Rex Alan Dinesen ("Plaintiff"), by and through his attorney, filed a Class Action Complaint in the Superior Court of the State of California for the County of Los Angeles, entitled: *Rex Alan Dinesen v. U.S. Tool Grinding, Inc., and Does 1 through 20, inclusive*, Case No. 23STCV02212 (hereinafter "Complaint"). (Declaration of Derek S. Sachs ("Sachs Decl."), ¶2 Ex. A [Pl.'s Comp.].)

2. Plaintiff's Complaint alleges nine causes of action for: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Permit Rest Breaks; (5) Failure to Reimburse Business Expenses; (6) Failure to Provide Accurate Itemized Wage Statements; (7) Failure to Pay Wags Timely During Employment; (8) Failure to Pay All Wages Due Upon Separation of Employment; and (9) Violation of Business and Professions Code section 17200, *et seq.* (Sachs. Decl., ¶2 Ex. A.)

3. Plaintiff served the Complaint on Defendant on May 1, 2023, via substituted service. (Declaration of Stephen Stroup ("Stroup Decl.") ¶3; Sachs Decl. ¶3 Ex. B [5-1-23 Proof of Service].) Accordingly, this Notice of Removal is timely filed within 30 days of service of process. 28 U.S.C. § 1446.

4. The Superior Court of the State of California, County of Los Angeles, is located within the Central District of California. Thus, venue is proper under 28 U.S.C. section 84(a) because this is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

5. No previous application has been made for the relief requested herein.

6. Pursuant to 28 U.S.C. section 1446(a), all process, pleadings, and orders that have been filed, served, or received by Defendant in this action are attached hereto.

7. A true and correct copy of this Notice of Removal will be served upon all parties and filed with the Clerk of the Superior Court of the State of California,

County of Los Angeles, in accordance with 28 U.S.C. section 1446(d).

**REMOVAL IS PROPER UNDER CAFA**

8. This case is subject to removal under the Class Action Fairness Act ("CAFA") of 2005. Pub. L. No. 109-2, 119 Stat. 4. 28 U.S.C. §§ 1332(d) and 1453.

9. CAFA grants federal district courts jurisdiction over civil class action lawsuits in which any plaintiff is a citizen of a state different from any defendant, and where the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d).

10. Under CAFA jurisdiction, unlike other diversity jurisdiction cases, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

11. Plaintiff purports to bring this suit on behalf of "[a]ll California citizens currently or formerly employed by [Defendant] as non-exempt employees in the State of California at any time between August 7, 2018, and the date of class certification." (Compl. at ¶20.) Plaintiff also purports to certify a "Waiting Time Subclass" on behalf of "[a]ll members of the Class who separated their employment with Defendant at any time between August 7, 2019, and the date of class certification." (Compl. at ¶21.) This class case, brought under California *Code of Civil Procedure* section 382, is a statute similar to a class action as defined in Rule 23 of the Federal Rules of Civil Procedure. 28 U.S.C. § 1332(d)(1)(B).

12. Specifically, this Court has jurisdiction over this case under CAFA because it is a civil putative class action wherein: (1) there are 100 or more members in Plaintiff's proposed class; (2) Defendant is not a state, state official, or other governmental entity; (3) there is minimal diversity between at least one member and one defendant; and (4) the aggregate amount in controversy exceeds $5,000,000.00. Thus, this Court has subject matter jurisdiction over this action under 28 U.S.C. sections 1332(d) and 1453(b).

/ / /

**THE PUTATIVE CLASS SIZE CONSISTS OF MORE THAN 100 MEMBERS.**

13. The aggregate number of class members in Plaintiff's proposed class of non-exempt employees in the State of California at any time between August 7, 2018, to the present is approximately 159. (Stoup Decl., ¶9.)

14. Defendant is not a state, state official, or any other government entity. (Stoup Decl., ¶4.)

15. At least one member of the proposed class is a citizen of a state different from Defendant. 28 U.S.C. § 1332(d)(2)(A).

16. For purposes of diversity, a natural person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries*, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place they reside with the intention to remain or to which they intend to return. *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001).

17. According to the Complaint, Plaintiff is a California resident and was generally employed by Defendant throughout his employment based out of Defendant's work site in California. (Compl. ¶¶ 1-2, 9-10, 20.) These allegations establish that he is a citizen of the State of California. *See Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency can create a rebuttable presumption of domicile supporting diversity of citizenship).

18. Likewise, the members of the proposed class are Defendant's current and former employees within the State of California. (Compl. ¶20.)

19. For diversity purposes, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . .." 28 USC § 1332(c)(1). When determining a corporation's principal place of business for purposes of diversity jurisdiction, courts refer to the place where a corporation's officers direct, control, and coordinate the corporation's activities. *Hertz Corp. v. Friend*, 559 U.S.

77, 92-93, 130 S. Ct. 1181, 175 L. Ed. 2d 1029 (2010). A corporation's principal place of business is where the corporation "maintains its headquarters-provided that the headquarters is the actual center of direction, control and coordination." *Id.; Garcia v. Wal-Mart Stores* (C.D.Cal. Oct. 14, 2016, No. CV 16-01645-BRO (RAO)) 2016 U.S.Dist.LEXIS 142807, at *11-12.)

20. Defendant, a corporation, is a citizen of the state where its principal place of business is located and the state under whose law it is organized. 28 U.S.C. § 1332(d)(10). Defendant is the legal employer of all its employees in California. (Stoup Decl., ¶5.)

21. Defendant is a corporation formed under the laws of the State of Missouri. (Stoup Decl., ¶6.) At all relevant times, its principal place of business and corporate headquarters is in Farmington, Missouri. (*Id.*) As such, Defendant is a citizen of the State of Missouri.

**THE AMOUNT IN CONTROVERSY REQUIREMENT IS SATISFIED.**

22. To remove a case under CAFA, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co*., LLC, 574 U.S. at 89. In determining the amount in controversy, courts may consider "evidence outside the complaint, including affidavits or declarations, or other summary judgment type evidence relevant to the amount in controversy" at the time of removal. *Ibarra v. Manheim Invs., Inc.,* 775 F. 3d 1193, 1997 (9th Cir. 2015) (internal quotations omitted). The "amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communications, Inc*., 627 F. 3d 395, 400 (9th Cir. 2010).

23. Defendant disputes that this class could ever be certified, and Defendant disputes that it is liable for any of Plaintiff's claims asserted in the Complaint. Nevertheless, the aggregate amount in controversy, exclusive of interests and costs, exceeds $5,000,000.00. 28 U.S.C. § 1332(d)(2), (6). Although

Plaintiff does not plead a specific amount of damages, Defendant can demonstrate that the aggregate amount in controversy exceeds $5,000,000.00. *See Dart Cherokee Basin Operating Co.*, LLC, 574 U.S. at 84 ("When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so.").

24. Plaintiff alleges that Defendant failed to pay Plaintiff and the putative class members for all hours worked, including minimum and overtime wages. Plaintiff additionally alleges that Defendant failed to provide Plaintiff and the putative class with meal and rest periods. Plaintiff further alleges that Defendant is liable for its failure to timely pay wages during employment, failure to provide accurate wage statements, waiting time penalties, unreimbursed business expenses, and for unlawful and unfair business practices.

25. Plaintiff seeks the following relief on behalf of himself and the putative class: (a) Compensatory damages for unpaid minimum and overtime wages; (b) Liquidated damages for unpaid minimum wage and interest; (c) Compensatory damages for meal period premiums; (d) Compensatory damages for rest period premiums; (e) Penalties pursuant *Labor Code* § 226(e); (f) Penalties pursuant *Labor Code* § 204; (g) Waiting Time Penalties; (h) Unreimbursed business expenses; (i) Restitution under *Business and Professions Code* section 17200; and (j) Attorneys' fees and costs.

26. Defendant's notice of removal "need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co.*, LLC, 574 U.S. at 84. In showing the amount in controversy, Defendant "may rely on reasonable assumptions." *Arias v. Residence Inn*, 936 F.3d 920, 922 (9th Cir. 2019). The amount in controversy is "simply an estimate of the total amount in dispute . . . . [and] [i]n that sense, the amount in controversy reflects the maximum recovery [a] plaintiff could reasonably recover" on a complaint at the time of removal. *Id.* at p. 927. Moreover, "[a]n assertion that the amount in controversy exceeds the

jurisdictional threshold is not defeated merely because it is equally possible that the damages might be less than the requisite amount." *Id.* (quotation marks omitted).

27. It is permissible for Defendant, when the Complaint does not provide clear indications of the amount in controversy, to rely on putative class members' employee data and reasonably assumed violation rates based upon the Complaint when determining the amount in controversy. *See Id.* Defendant may rely on "a chain of reasoning that includes assumptions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d at 1199. Defendant does not need to "provide evidence proving the assumptions correct." *Arias*, 936 F.3d at 927. Instead, "assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" *Id.* (citation omitted).

**Failure To Provide Meal And Rest Periods.**

28. California *Labor Code* section 512, subdivision (a), provides that employers must provide meal periods, generally, for employees who work more than five hours per day, and that the meal period must be an uninterrupted 30 minutes where the employee is free from all duties. The California Wage Orders generally provide that employers shall offer a ten-minute, uninterrupted rest period per four hours of work, or a major fraction thereof. *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1028-29 (2012). *Labor Code* section 226.7 provides that employers who fail to provide a meal or rest period are subject to a premium payment of one hour's wages to the employee.

29. With respect to his meal period claim, Plaintiff alleges in the Complaint that "Plaintiff and Class Members did not receive all meal periods or payment of one (1) additional hour of pay at Plaintiff's and Class Members' regular rate of pay when they did not receive at timely, uninterrupted meal period." (Compl. ¶30.) Plaintiff contends "[d]uring the relevant time period, Plaintiff and Class Members did not receive compliant meal periods for working more than five (5) and ten (10) hours per day because their meal periods were missed, late, short, interrupted, and/or

they were not permitted to take a second meal period." (Compl. ¶61.) Plaintiff alleges "[a]t all relevant times, [Defendant] failed to pay Plaintiff and Class Members meal period premiums for missed, late, and/or short meal periods pursuant to Labor Code § 226.7(b) and section 11 of the applicable IWC Wage Order." (Compl. ¶63.) Plaintiff further alleges "[a]s a result of [Defendant's] failure to pay Plaintiff and Class Members an additional hour of pay for each day a compliant meal period was not provided, Plaintiff and Class Members suffered and continue to suffer a loss of wages and compensation." (Compl. ¶64.)

30. With respect to his rest period claim, Plaintiff alleges in the Complaint that "Plaintiff and Class Members did not receive all rest breaks or payment of one (1) additional hour of pay at Plaintiff's and Class Member's regular rate of pay when a rest break was missed, late, or interrupted." (Compl. ¶31.) Plaintiff further alleges "[d]uring the relevant time period, Plaintiff and Class Members did not receive a ten (10) minute rest period for every four (4) hours or major fraction thereof worked, including working in excess of ten (10) hours in a day, because they were required to work through their rest periods and/or were not authorized to take their rest periods." (Compl. ¶68.) Plaintiff claims "[a]t all relevant times, [Defendant] failed to pay Plaintiff and Class members rest period premiums for missed, late, and/or interrupted rest periods pursuant to Labor Code § 226.7(b) and section 12 of the applicable IWC Wage Order." (Compl. ¶70.) Plaintiff alleges "[a]s a result of [Defendant's] failure to pay Plaintiff and Class Members an additional hour of pay for each day a compliant rest period was not provided, Plaintiff and Class Members suffered and continue to suffer a loss of wages and compensation." (Compl. ¶71.)

31. Based on the allegations that Defendant "at all relevant times" failed to pay Plaintiff and Class Members meal or rest period premiums for missed, late, and/or short rest or meal periods, Defendant reasonably assumes one meal period violation per day and one rest period violation per day. *See Elizarraz v. United Rentals, Inc.,*

2019 U.S. Dist. LEXIS 62065, No. 2:18-CV-09533- ODW(JC), at *3-4 (C.D. Cal. Apr. 9, 2019) (finding violation rates of 50% for meal period claims reasonable in light of pattern and practice allegations); *Avila v. Kiewit Corp.*, 789 Fed.Appx. 32, 33-34 (9th Cir. 2019), (holding that words such as "frequently" or "regularly, but not always" can support an inference that 100% of employees received at least one violation). From August 7, 2018, through the present, Defendant employed approximately **159** employees who worked approximately **14,345** workweeks. (Stoup Decl., ¶9.)

32. Utilizing a violation rate of one meal and one rest period per day, each employee's current or final rate of pay—the premium payment—is multiplied by the number of workweeks that the employee worked within the statutory period. Summing this data for each employee reveals the amount in controversy for the meal period claim is at least approximately **$1,260,800.50**, and the amount in controversy for the rest period claim is at least approximately **$1,260,800.50.**

**WAGE STATEMENT VIOLATIONS.**

33. California *Labor Code* section 226(a) requires that nine categories of information be included on each pay stub, including: (1) gross wages earned; (2) total hours worked by each employee; (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; (4) all deductions; (5) net wages earned; (6) the inclusive dates of the period for which the employee is being paid; (7) the employee's name and identification number or the last four digits of the employee's social security number; (8) the name and address of the legal entity that is the employer; and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. If there is a violation, the damages are governed by *Labor Code* section 226(e), which provides that "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the

initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorneys' fees."

34. *Labor Code* section 226(e) claims statutory penalties have a one-year statute of limitations. *See Code Civ. Proc.* § 340(a). Thus, the applicable statute of limitations for this claim is from February 1, 2022, to present.

35. Plaintiff alleges in the Complaint that Defendant "[i]n violation of the *Labor Code*, Plaintiff and Class Members were not provided with accurate itemized wage statements." (Compl. ¶33.) Plaintiff contends "[d]uring the relevant time period, [Defendant] having knowingly and intentionally failed to comply with Labor Code § 226(a) on wage statements that were provided to Plaintiff and Class Members." (Compl. ¶82.) Plaintiff alleges "[t]he deficiencies include, among other things, the failure to correctly state the gross and net wages earned, total hours worked, all applicable hourly rates in effect, and the number of hours worked at each hourly rate by Plaintiff and Class members." (Compl. ¶82.)

36. Plaintiff alleges "[a]s a result of [Defendant's] knowing and intentional failure to comply with Labor Code § 226(a), Plaintiff and Class Members have suffered injury and damage to their statutorily protected rights." (Compl. ¶83.) Plaintiff further alleges "because [Defendant] failed to provide the accurate rates of pay on wage statements, [Defendant] prevented Plaintiff and Class Members from determining if all hours worked were paid at the appropriate rate and the extent of the underpayment." (Compl. ¶83.) Plaintiff claims "Plaintiff and Class Members are entitled to recover from [Defendant] the greater of all actual damages caused by Defendants' failure to comply with Labor Code § 226(a) or fifty dollars ($50.00) for the initial pay period in which a violation occurred and one hundred dollars ($100.00) per employee for each violation in subsequent pay periods in an amount not exceeding four thousand dollars ($4,000.00) per employee, plus attorneys' fees

and costs." (Compl. ¶84.) Plaintiff also claims "[a]s a result of Defendants' knowing and intentional failure to comply with California Labor Code § 226(a), Plaintiff and Class Members have suffered an injury, in the exact amount of damages and/or penalties to be shown according to proof at trial." (Compl. ¶84.)

37. Due to the language in the Complaint alleging that Defendant failed to provide Plaintiff and the similarly situated Employee Class members with accurate itemized wage statements, Defendant assumed a 100% violation rate for purposes of estimating damages.

38. There are approximately **93** non-exempt employees employed from February 1, 2022, to present. (Stoup Decl., ¶10.) In that same time period, the total number of pay periods for all class members is approximately 4,077. (*Id.*) The amount in controversy is calculated by multiplying the number of initial pay periods for each employee by the penalty rate, $50 and adding the remaining pay periods multiplied by $100. No individual employee's penalty exceeded $4,000 in this calculation. This results in approximately **$293,800** in penalties for the *Labor Code* section 226 wage statement claim.

**<u>WAITING TIME PENALTIES.</u>**

39. California *Labor Code* sections 201 and 202 require that employees be paid all wages owed to them upon their termination from employment. *Labor Code* section 203 provides for waiting time penalties if an employer willfully violates these provisions. The penalties are assessed at an amount equal to the employee's daily wages for each day the wages remain unpaid, up to thirty days' wages. Cal. *Lab. Code* § 203.

40. The waiting time penalties class consists of all of Defendant's hourly paid, nonexempt California employees employed within three years preceding the filing of the Complaint subject to tolling as alleged in Plaintiff's Complaint.

41. Plaintiff alleges in the Complaint that "[i]n violation of the *Labor Code*, the Waiting Time Subclass did not receive payment of all wages within the

permissible time periods." (Compl. ¶34.) Plaintiff further alleges "[d]uring the relevant time period, [Defendant] willfully failed to pay the Waiting Time Subclass all their earned wages upon termination, either at the time of discharge or within seventy-two (72) hours of their leaving [Defendant's] employ." (Compl. ¶93.) Plaintiff claims "[p]ursuant to *Labor Code* § 203, the Waiting Time Subclass is entitled to recover from [Defendant] the statutory penalty, which is defined as the Waiting Time Subclass members' regular daily wages at their regular hourly rate of pay for each day they were not paid, up to a maximum of thirty (30) days." (Compl. ¶96.)

42. The number of non-exempt employees terminated or that resigned between August 7, 2019, through the present is approximately **72**. (Stoup Decl., ¶11.) The average hourly rate for these former employees is approximately **$20.22** per hour. (*Id.*)

43. Based upon Plaintiff's assertion that Defendant "failed" to pay all wages upon termination "during the relevant time period," Defendant assumed a 100% violation rate for the waiting time penalties. *See Kastler v. Oh My Green*, 2019 U.S. Dist. LEXIS 185484, No. 19-cv-02411-HSG, at p. *15-16 (a 100% violation rate is reasonable when based upon an unpaid wages claim because it assumes that every putative class member incurred damages for at least one other claim in the complaint).

44. Based on this violation rate, within the Employee Data, each employee's final hourly rate of pay was multiplied by their scheduled daily hours to achieve their daily rate, then multiplied by 30 days. Summing this data for each employee reveals the amount in controversy for this claim to be approximately **$395,998.72.**

**UNPAID WAGES.**

45. California *Labor Code* section 510(a) provides: "Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and

any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee."

46. The unpaid wages class consists of all of Defendant's hourly paid, non-exempt California employees employed within four years preceding the filing of the Complaint subject to tolling as alleged in Plaintiff's Complaint.

47. Plaintiff alleges that "[i]n violation of the Labor Code and IWC Wage Orders, Plaintiff and Class Members were not paid all wages (including minimum wages and overtime wages) for all hours worked at the correct rate and within the correct time." (Compl. ¶29.) Plaintiff further alleges "[p]ursuant to *Labor Code* § 1194, Plaintiff and Class Members are entitled to recover their unpaid overtime and double time compensation as well as interest, costs, and attorneys' fees." (Compl. ¶55.)

48. From August 7, 2018, through the present, Defendant employed approximately 159 employees who worked approximately **14,345** workweeks. (Stoup Decl., ¶9.)

49. Based upon Plaintiff's assertion that Defendant "failed" to pay Plaintiff and Class Members "all wages" for "all hours worked," Defendant assumed one (1) hour of unpaid time per day per employee. *See Kastler v. Oh My Green*, 2019 U.S. Dist. LEXIS 185484, No. 19-cv-02411- HSG, at p. *15-16 (a 100% violation rate is reasonable when based upon an unpaid wages claim because it assumes that every putative class member incurred damages for at least one other claim in the complaint). *See also Trigueros v. Stanford Fed. Credit Union* (N.D.Cal. June 28,

2021, No. 21-cv-01079-BLF) 2021 U.S.Dist.LEXIS 120271, at *16-17 citing *Chavez v. Pratt* (*Robert Mann Packaging*), LLC (N.D.Cal. Apr. 5, 2019, No. 19-cv-00719-NC) 2019 U.S.Dist.LEXIS 59399 at *3-4 (Chavez included a general allegation that, "by failing to pay minimum wage, overtime wages, and meal and rest break premiums, [the defendant] had a 'pattern and practice' of failing to pay class members 'the wages owed to them upon discharge or resignation…Despite the plaintiff's objections, the court held that, "[b]y tying the unpaid final wage claim to his other claims, [the plaintiff] makes [the defendant's] assumption of 100% violation for unpaid wages reasonable—that is, if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed [the defendant] during the statutory period was due unpaid wages"); *see also Ramirez v. Cornerstone Bldg. Brands (*E.D.Cal. Apr. 4, 2022, No. 2:21-cv-01017-MCE-JDP) 2022 U.S.Dist.LEXIS 63673, at *11 (Given the fact that plaintiffs did not quantify the amount of overtime in addition to the regular pay calculations they may be owed, courts have found that overtime rates of one hour per week are in order for the purposes of evaluating CAFA's amount in controversy requirement").

50. Based on one (1) hour of unpaid overtime per day, within the Employee Data, each employee's final overtime hourly rate of pay was multiplied by the number of workweeks worked by the employee. Summing this data for each employee reveals the amount in controversy for this claim to be approximately **$2,136,648.30**

**UNREIMBURSED BUSINESS EXPENSES.**

51. California *Labor Code* section 2802(a) states that an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties. Like unpaid minimum wages, overtime wages, and premium wages, business expenses are recoverable as restitution under California *Business & Professions Code* section 17200. *See Espejo v. The Copley Press, Inc.*, 13 Cal.App.5th 329, 367 (2017)

(citing *Cortez v. Purolater Air Filtration Products Co*., 23 Cal.4th 163 (2000)); *see also Harris v. Best Buy Stores*, L.P., 2016 WL 4073327, at *10 (N.D. Cal. 2016).

52. The unreimbursed business expenses class consists of all of Defendant's hourly paid, non-exempt California employees employed within four years preceding the filing of the Complaint, subject to tolling as alleged in Plaintiff's Complaint.

53. Plaintiff alleges in the Complaint that "[d]uring the relevant time period, Plaintiff and Class Members incurred necessary business-related costs that were not fully reimbursed by [Defendant]." (Compl. ¶77.) Plaintiff further alleges "[i]n violation of *Labor Code* §§ 2800 and 2802, [Defendant] failed to reimburse or indemnify Plaintiff and Class Members for their expenses due to Defendants' knowing and intentional failure to reimburse necessary business expenditures in connection with Plaintiffs and Class Members' work and job duties." (Compl. ¶78.)

54. The number of non-exempt employees between August 7, 2018, through the present is approximately 159. (Stoup Decl., ¶9.)

55. Based upon Plaintiff's assertion that Defendant "failed" to reimburse business expenditures for Plaintiff and Class Members, Defendant assumed $20.00 per month just for alleged cell phone usage. *See Kastler v. Oh My Green*, 2019 U.S. Dist. LEXIS 185484, No. 19-cv-02411-HSG, at p. *15-16 (a 100% violation rate is reasonable when based upon an unpaid wages claim because it assumes that every putative class member incurred damages for at least one other claim in the complaint). *See also Anderson v. Starbucks Corp.* (N.D.Cal. 2020) 556 F. Supp. 3d 1132 (Defendant established its amount in controversy based on a reasonable low-end estimate for monthly cell phone fee of $50 in its notice of removal.)

56. Based on a **$25.00** per month cell phone reimbursement, this amount was multiplied by the total months worked during the class period. From August 7, 2018 to the present, the putative class worked approximately **3,376 months.** (Stoup Decl. ¶12.) Summing this data for each employee reveals the amount in controversy

for this claim to be approximately **$84,400.**

**ATTORNEY'S' FEES.**

57. For CAFA cases, "attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy." *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018). Further, "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Id.* "The Defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence." *Id.*

58. Most of the *Labor Code* provisions for which Plaintiff seeks damages include the provision of attorneys' fees, with the exception of the claim for meal and rest period violations.

59. In general, a 25% benchmark of the potential damages constitutes the potential attorneys' fees. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (holding that where attorneys' fees are permissibly used in calculating the amount in controversy, a benchmark of 25% of the common fund was appropriate). Although this is not a per se rule, a 25% benchmark of attorneys' fees is generally reasonable. *Arias*, 936 F.3d at 928.

60. In the case at hand, even without including the attorneys' fees, the stated amount in controversy thus far, which includes only meal and rest period violations, waiting time penalties, wage statement violations, unpaid wages, and cell phone reimbursement is approximately **$5,432,448.01.** Applying a 25% benchmark to this sum results in attorneys' fees of approximately **$1,358,112.00.**

**SERVICE OF NOTICE ON PLAINTIFFS AND STATE COURT**

61. Contemporaneous with the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of the removal will be given by the undersigned to Plaintiff's counsel of record, Samuel A. Wong, Kashif Haque, and Jessica L. Campbell of the Aegis Law Firm,

PC, and a copy of this Notice of Removal will be served upon all parties and filed with the Clerk of the Superior Court of the State of California, for the County of Los Angeles, where the action is currently pending, as required by 28 U.S.C. § 1446(d).

**NO OTHER DEFENDANTS HAVE JOINED THE ACTION**

62. There are no other defendants that have been named or served in this action, thus there are no other defendants to join in this Notice of Removal.

WHEREFORE, Defendant respectfully removes this action from the Superior Court of the State of California, for the County of Los Angeles, bearing case number Case No. 23STCV02212, to this Court pursuant to 28 U.S.C. § 1332, 1441, 1446, and 1453.

DATED: May 30, 2023

**BARBER RANEN LLP**

By: ______________________

Derek S. Sachs
George J. Theofanis
Attorneys for Defendant U.S. Tool Grinding, Inc.